UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID MACKEL, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No.: 20-cv-4015-MMM |
| | ) |
| GRACE B. HOU, et al., | ) |
| | ) |
| Defendants. | ) |

## MERIT REVIEW ORDER

Plaintiff, proceeding *pro se* and detained at the Rushville Treatment and Detention Center, seeks leave to proceed *in forma pauperis*. The "privilege to proceed without posting security for costs and fees is reserved to the many truly impoverished litigants who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them." *Brewster v. North Am. Van Lines, Inc.*, 461 F.2d 649, 651 (7th Cir. 1972). A court must dismiss cases proceeding *in forma pauperis* "at any time" if the action is frivolous, malicious, or fails to state a claim, even if part of the filing fee has been paid. 28 U.S.C. § 1915(d)(2). A court is to grant leave to proceed *in forma pauperis* only if the complaint states a federal claim.

In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff' favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "'state a claim for relief that is plausible on its face.'" *Alexander v. U.S.*, 721 F.3d 418, 422 (7th Cir. 2013)(quoted cite omitted).

1

## ANALYSIS

Plaintiff is civilly detained at the Rushville Treatment and Detention Center pursuant to the Illinois Sexually Violent Persons Commitment Act, 725 ILCS 207/1, *et seq*. Plaintiff alleges inhumane conditions of confinement, violation of the Prison Rape Elimination Act ("PREA"), violations of equal protection, sexual harassment, sexual discrimination, due process violations, defamation, and retaliation against a dozen individuals. All of the claims are premised on Plaintiff's frustrated attempts to room with resident Hydron. Plaintiff asserts that his choice of roommate has not been allowed in part, due to discrimination based on his gay/bisexual orientation. He claims, further, that staff have refused this arrangement in retaliation for a lawsuit Plaintiff filed in 2016 against Joseph Hankins, a retired Rushville employee, not a party to this action.[1]

On April 12, 2016, Plaintiff filed a lawsuit against former employee Hankins based on Hankins's decision to separate him and resident Hydron. In that suit, Plaintiff asserted that he and Mr. Hydron had been roommates from January 3, 2010 through October 9, 2012 but, that after October 9, 2012, Mr. Hankins and the other members of the Rooming Committee would not allow the arrangement to continue. Plaintiff testified at his deposition that this was allegedly due to staff suspicions that there was that there was inappropriate conduct between them and their observation that Plaintiff "treated Hydron like a child." *See Hankins,* No. 16-4073 at [ECF 32 p. 3].

Plaintiff claimed in the 2016 lawsuit that Mr. Hankins's admitted that he would not allow Plaintiff to room with Hydron in retaliation for Plaintiff naming Hankins in yet another lawsuit, *Mackel v. Jumper*, et al., No. 14-cv-3114 (C.D.Ill. Apr. 11, 2014). Plaintiff claims that

---

[1] *Mackel v. Hankins*, No. 16-4073 (C.D.Ill. Apr. 12, 2016) ("*Hankins*").

this retaliatory motive extends to the present case as, in 2018, Defendants Lodge and Pennock told Plaintiff they would not allow him to room with Hydron in retaliation for Plaintiff's 2016 lawsuit against Hankins. It is noted that *Hankins* was dismissed at summary judgment for Plaintiff's failure to establish retaliation by Hankins as he would have denied the requested living arrangement regardless of retaliatory motive.

Plaintiff alleges generally, that all Defendants; Hou, Coleman, Scott, McCurry, Dobier, Lodge, Pennock, Perez, Wilcoxen, Wilson and Clayton, have violated his rights to equal protection and have discriminated against him due to his gay/bisexual orientation by refusing to allow him to room with Hydron. Plaintiff alleges, further, that Defendant Seymour accused him of wanting to further a sexual relationship with Mr. Hydron. Plaintiff claims that this was a demeaning statement in violation of the PREA. The PREA does not, however, provide for a private right of action and this claim is DISMISSED. *See Schuenke v. Wisconsin Dept. of Corrections*, 2014 WL 905529 *3 (W.D. Wis.); *Meeks v. Wisconsin Resource Center*, 2015 WL 847481 *2 (E.D. Wis.).

Despite this history, on July 17, 2018, Plaintiff submitted yet another Resident Room Change Request, asking to be placed with Mr. Hydron. Plaintiff faults the Rooming Committee for denying this and placing him with other "unrequested" roommates. Plaintiff alleges that one of these roommates threatened to rape Plaintiff's elderly mother and family. Plaintiff does not allege, however, that this individual made any threats against him.

Plaintiff was cited for refusing housing with this individual and found guilty of staff manipulation. Plaintiff was placed on a disciplinary unit and facility staff moved his personal possessions from his room. Plaintiff alleges that unidentified staff members "stole anything and everything that would fit in their pockets." Any claim as to the loss of personal property may

not, however, proceed as "the deprivation or destruction of personal property, however, does not implicate liberty or property interests protected by the Fourteenth Amendment, even if those acts are intentional." *Wynn v. Southward*, 251 F.3d 588, 592-93 (7th Cir. 2001).

On August 26, 2018, Plaintiff submitted another roommate request form to Defendant Lodge. When she did not recommend his placement with Hydron, Plaintiff "felt" this was due to retaliation. Plaintiff sent additional requests to various Defendants, including Defendant McCurry, which were all denied. At one point, Plaintiff asked whether Mr. McCurry's denial was in retaliation for Plaintiff's 2016 lawsuit against Hankins. Defendant replied, "[y]our requests to room with this Resident have been Denied on the basis of the pairing being in appropriate. The Denials are in no way connected to any past or present legal action you may take!" [ECF 1p. 9].

Plaintiff also alleges that a former roommate accused him of rape and that staff's very investigation of this charge "defamed" him. While Plaintiff asserts a conditions of confinement claim, this appears to be related only to his not being allowed a roommate of his choosing rather than any physical or environmental conditions to which he was subject.

## ANALYSIS

It is clear that Plaintiff does not have the constitutional right to a roommate of his choosing. *See Riccardo v. Rausch*, 375 F.3d 521, 525–26 (7th Cir. 2004). "Illinois is free, if it wishes, to give prisoners veto power over the identity of their cellmates. But the eighth amendment does not do so of its own force, and prisoners cannot use the Constitution to achieve this control indirectly by making unsubstantiated assertions." *See also, Smego v. Weitl*, No. 13-3068, 2016 WL 10934368, at *7 (C.D. Ill. Dec. 6, 2016), *aff'd sub nom. Smego*

*v. Jumper*, 707 Fed. Appx. 411 (7th Cir. 2017) (civil detainee does not have a right to "a roommate of his own choosing.")

It is also clear, however, that "otherwise permissible conduct can become impermissible when done for retaliatory reasons." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). Even though Plaintiff does not have a constitutional right to room with Mr. Hydron, he cannot be denied the opportunity if the denial is merely in retaliation for his exercise of a First Amendment right. *Henderson v. Adams*, No. 06-6451, 2007 WL 4287559, at *5 (N.D. Ill. Nov. 30, 2007) (civil detainees have a protected First Amendment right to file lawsuits and may not suffer retaliation for his exercise of a constitutional right).

To successfully plead a retaliation claim, Plaintiff must allege not only that he engaged in protected activity and suffered a deprivation, but that the protected activity was "at least a motivating factor" in Defendants' retaliatory action. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). Here, there is a record that Plaintiff was separated from Mr. Hydron for clinical reasons, the perceived inappropriate relationship. In fact, Judge Myerscough found in *Hankins,* which has no precedential application to this case, that "Plaintiff's interactions with Mr. Hydron were legitimate reasons to keep the two apart even if Plaintiff disagrees." *Hankins*, No. 16-4073 [ECF 32 p. 6].

Here, Plaintiff himself, puts forth facts to support that Defendants were motivated by reasons of clinical judgment rather than retaliatory animus when they refused Plaintiff's housing requests. While he claims that in 2018 Defendants Lodge and Pennock admitted that they would not place him with Hydron in retaliation for his suit against Hankins, it is not clear why Defendants would be motivated to retaliate for a lawsuit filed against a former co-worker some two or three years prior. *See Spiegla v. Hull,* 371 F.3d 928, 942 (7th Cir. 2004) (plaintiff's

5

protected activity must have been a motivating factor in defendant's retaliatory action). Rather, Plaintiff provides sufficient facts to support that staff had consistently denied his requests to live with Hydron for clinical reasons, including the desire to protect Hydron from Plaintiff's perceived over-influence. Here, Plaintiff does not allege that there was any change to himself, Mr. Hydron, or their relationship which should have caused staff to revisit the decision made in 2012, and consistently followed thereafter.

Plaintiff's retaliation claim is further questionable as he fails to establish that the alleged retaliation occurred in close proximity to the First Amendment activity. *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (court to consider whether the retaliation fell "close on the heels" of the protected activity). *Id.* at 966 (affirming dismissal of retaliation claim at summary judgment due to lack of proximity). Here, Plaintiff might well have difficulty establishing that a 2016 lawsuit was the basis for retaliatory conduct in 2018 and 2019. Out of an abundance of caution, the retaliation claim will be allowed to proceed as to Defendants Lodge and Pennock, only.

Plaintiff also asserts equal protection and discrimination claims for the failure to place him with Mr. Hydron. Plaintiff fails to plead any facts to support that this failure was in discrimination of his gay and bisexual orientation. Plaintiff does, however, plead facts to support that the clinical therapist and staff denied Plaintiff's housing requests, based on Plaintiff's condition, predilections, and his perceived undue influence over Mr. Hydron. *See Overton v Bazzetta*, 539 U.S. 126, 132 (2003) (the courts are to accord "substantial deference to the professional judgment of prison administrators…" ) The discrimination, equal protection and other claims are DISMISSED.

6

**IT IS THEREFORE ORDERED:**

1. Plaintiff's petition to proceed in forma pauperis [ECF 3] is GRANTED. This case shall proceed solely on the retaliation claims asserted against Defendants Lodge and Pennock. Any claims not identified will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of court pursuant to Federal Rule of Civil Procedure 15. All remaining Defendants are DISMISSED.

2. Plaintiff files [4], a motion for recruitment of *pro bono* counsel but does not indicate that he attempted to secure counsel on his own. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). [4] is DENIED at this time. In the event that Plaintiff renews his motion for appointment of counsel, he is to provide copies of the letters sent to, and received from, prospective counsel.

3. The Clerk is directed to send to each Defendant pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3) a copy of the Complaint; and 4) a copy of this Order.

4. If a Defendant fails to sign and return a Waiver of Service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2). If a Defendant no longer works at the address provided by Plaintiff, the entity for which Defendant worked at the time identified in the Complaint shall provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information will be used only for purposes of effecting service. Documentation of forwarding addresses will be maintained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5.      Defendants shall file an answer within the prescribed by Local Rule. A Motion to Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings are to address the issues and claims identified in this Order.

6.      Plaintiff shall serve upon any Defendant who has been served, but who is not represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the Court and shall also file a certificate of service stating the date on which the copy was mailed. Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a required certificate of service will be stricken by the Court.

7.      Once counsel has appeared for a Defendant, Plaintiff need not send copies of filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send notice of electronic filing to defense counsel. The notice of electronic filing shall constitute notice to Defendant pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

8.      Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the depositions.

9.      Plaintiff shall immediately notice the Court of any change in mailing address or phone number. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:

  1) ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD PROCEDURES; AND,

2) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES.

LASTLY, IT IS ORDERED THAT IF A DEFENDANT FAILS TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT FORMAL SERVICE THROUGH THE U.S. MARSHAL'S SERVICE ON THAT DEFENDANT AND WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).

5/19/2020
ENTERED:

s/Michael M. Mihm
MICHAEL M. MIHM
UNITED STATES DISTRICT JUDGE